(57 South. 891.)

No. 18,811.

SMITH v. AMERICAN BRIDGE CO. et al.

(Feb. 12, 1912. Rehearing Denied March 11, 1912.)

*(Syllabus by the Court.)*

1. APPEAL AND ERROR (§ 1118*) — AMENDMENT OF JUDGMENT.

A judgment cannot be amended as between coappellees.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4414; Dec. Dig. § 1118.*]

2. MASTER AND SERVANT (§ 107*)—APPEAL AND ERROR (§ 1151*)—INJURIES TO SERVANT—DEFECTIVE APPLIANCES—INCREASE OF AWARD.

Where a defective hook used to fasten a chain on a timber "gig" was the cause of, or contributed to, an accident to an employé without fault on his part, the employer will be held responsible in damages. In a proper case an award of damages will be increased on appeal, but not beyond the amount claimed by plaintiff before suit, with knowledge of the extent of the injuries sustained by him.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 107;* Appeal and Error, Cent. Dig. §§ 4498–4506; Dec. Dig. § 1151.*]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by Charles Smith against the American Bridge Company and others. Action dismissed as to the American Bridge Company and the Jefferson Construction Company, and judgment rendered against Harry F. Grimm, who appeals. Amended and affirmed.

T. M. & J. D. Miller, for appellant Harry F. Grimm. J. C. Hollingsworth and Carroll, Henderson & Carroll, for appellee Charles Smith.

LAND, J. This is a suit for damages for personal injuries sustained by the plaintiff while in the employment of the defendants. The action was dismissed by the court as to the Jefferson Construction Company and the American Bridge Company and judgment was rendered in favor of the plaintiff for $750 against the defendant Harry F. Grimm, a subcontractor, who employed the plaintiff. The defendant Grimm is the only appellant from the judgment. Plaintiff has answered the appeal, and prayed that the judgment be amended by increasing the award of damages to $5,000 and by condemning the American Bridge Company and Grimm in solido.

[1] As a judgment cannot be amended as between coappellees, the demand against the American Bridge Company and the Jefferson Construction Company need not be further considered.

In their reply brief, counsel for defendant say:

"We will not discuss the citations set out in plaintiff's brief, because this case presents no issue of law, except the undisputed one that the burden of proof is on plaintiff to show negligence, and that before he can recover he must make his case reasonably certain."

Plaintiff, a man about 48 years of age, and a structural iron worker by vocation, was employed by defendant Grimm, who had a subcontract for the structural iron work of the City Hall Annex. On May 1, 1908, plaintiff, and other men in charge of a foreman, were sent to a certain yard for the purpose of moving to the building two pieces· of timber, 10 by 12 inches wide, and 30 or 35 feet long. The work required the use of a "gig," consisting of an iron axle, two wheels, a long pole, and a hook and chain. The modus operandi was to lift the pieces of timber and adjust them so as to balance, as near as practicable, on the axle, and then to fasten them to the axle by means of a chain wrapped around the timber and fastened underneath by means of a hook. This operation was performed in the instant case; the foreman fastening the chain around the timber. The foreman steered at the back end of the timber until the gig was pushed out of the yard, and then the plaintiff took his place. After proceeding a half a block and across two car tracks on Baronne street, the accident occurred. The plaintiff, a German, testified in part as follows:

"A. The hook in that chain was caught to the link, and the whole business slipped around, and the whole timber came on my leg.
"Q. What was it that fell on your leg?
"A. Two timbers.
"Q. Those were the 30-foot timbers you spoke about?
"A. Thirty or thirty-five feet, I didn't measure them.
"Q. Were you hurt?
"A. Yes, sir.
"Q. Were you hurt badly?
"A. I was hurt pretty good.
"Q. After these timbers had fallen on you, what was done with you?
"A. I was put in a carriage and carried home."

One of the timbers struck the plaintiff on his leg about the ankle, and crushed or fractured a small bone. That the hook and chain parted, and the pieces of timber fell to the ground, is shown by the nature of plaintiff's wound, and the testimony of Kelly to the effect that the defendant sent him and several other men to pick up the timber and bring it to the job, meaning the City Hall Annex then in the course of construction. Plaintiff was the only witness who was present at the accident, and, while his testimony is somewhat confused, it is clear enough that the chain became unhooked, and the timber fell and struck plaintiff on the ankle. The fact that the timber fell to the ground is also indicated by the instructions, given by defendant to his men, after the accident, not to put their legs or feet under the timber on the gig.

The petition alleges that the accident was occasioned by a defective hook and chain. The plaintiff frankly admits that he did not examine the hook and chain before or after the accident. The same apparatus seems to have been used after the accident. Defendant produced during the trial a rusty chain and hook, and testified that it was the same that was used on the timber gig at the time of the accident. Rafferty, an employé of the defendant, who used the timber gig after the accident, testified in part as follows:

"Q. When you examined this hook, was it in the same condition that it is now?
"A. No, sir; not when I first saw it. That hook looked a little too heavy for me. That is not the hook we had on the column.
"Q. That is not?
"A. No, sir; that looks a little too heavy for me.
"Q. What kind of hook was it that you examined?
"A. Something similar to this. It was smaller and closer hook than that. The crack was something similar to this one. Only I would have a fine time closing this hook with a brick, and the other hook I closed with a brick."
"A. Yes, I am pretty near positive that the other hook was lighter.
"Q. I understand you to say that you did something to it, with a brick; what was that?"

"A. Closed it in.

"Q. Why did you close it with a brick?

"A. Because it was opened too far, and when you grab like that they go right down tight, and when you have a little jar or shake the links would work through."

Kelly, another employé of defendant, did not examine the hook and chain on the day of the accident, but subsequently used the same timber gig, and identified the chain and hook produced by the defendant as being in the same condition it was the last time he saw it on the job. Whether Kelly saw the hook before or after it was closed by Rafferty does not appear. The hook and chain produced by the defendant has been sent up as an exhibit. It is admitted that the hook was cracked before the accident, and that by reason of the crack the opening was enlarged. To the eye of a nonexpert, the opening of the hook appears too large for safety. The excess of the opening accounts for the separation of the chain from the hook on the occasion in question, which was the immediate cause of the accident.

[2] The trial judge seems to have decided the case on the theory of the negligence of the foreman, as appears from the following extracts from his opinion:

"I am, however, satisfied from a careful reading of the evidence that the plaintiff was injured through the neglect of the foreman employed by Grimm. * * * The chain was passed around the beams by Webb. The hook caught between the links in such a negligent way that, after the 'gig' had traveled a short distance, being guided by the plaintiff, who stood at the rear of the moving apparatus, the hook became detached, allowing the beams to fall, inflicting on plaintiff the injuries complained of."

We are satisfied that the extra large opening of the hook contributed to the accident.

Considering the physical injuries (not permanent) inflicted on plaintiff, his pain and suffering, expenses incurred, and loss of wages, we are of opinion that the award of damages is inadequate. We, however, do not feel justified in increasing the award

beyond $1,000, the amount claimed of defendant by the plaintiff, through his counsel, six months after the injuries were sustained.

It is therefore ordered that the judgment below be amended by increasing the amount thereof to $1,000, and that as thus amended be affirmed; defendant and appellant to pay costs of appeal.